**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **In re:** | : |
|  | : |
|  | : **Chapter 11** |
| **PMA MEDICAL SPECIALISTS, LLC** | : |
| **a/d/b/a PRIME HEALTH NETWORK,** | : |
|  | : **Case No. 16-12016 (AMC)** |
| Debtor. | : |
|  | : |

**COMBINED MOTION OF PMA MEDICAL SPECIALISTS, LLC FOR (I) EXPEDITED CONSIDERATION, SHORTENED TIME AND LIMITED NOTICE, (II) FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO PAY CERTAIN PRE-PETITION (A) WAGES, SALARIES AND OTHER COMPENSATION, (B) REIMBURSEABLE EMPLOYEE EXPENSES, AND (C) EMPLOYEE MEDICAL AND SIMILAR BENEFITS, (III) AUTHORIZING THE DEBTOR TO CONTINUE PRE-PETITION EMPLOYEE PROGRAMS IN THE ORDINARY COURSE OF BUSINESS; (IV) AUTHORIZING RETENTION OF PRE-PETITION BANK ACCOUNTS AND BUSINESS FORMS AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENTS, AND (V) FOR RELATED RELIEF**

PMA Medical Specialists, LLC (the "Debtor"), by and through its proposed counsel, Obermayer Rebmann Maxwell & Hippel LLP, hereby moves this Court for the entry of an Order (a) granting expedited consideration, shortened time and limited notice; (b) authorizing, but not directing the Debtor to pay certain pre-petition (i) wages, salaries and other compensation, (ii) reimbursable employee expenses; and (iii) employee medical and similar benefits; authorizing the debtor to continue pre-petition employee programs in the ordinary course of business; (iv) authorizing retention of pre-petition bank accounts and business forms and directing banks and financial institutions to honor all checks and electronic payments related to the foregoing, and (v) for related relief (the "Motion"), and in support thereof, avers as follows:

**I.     JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

5021601

2.   Venue of the Debtor's Chapter 11 case and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   The statutory predicates for this Motion are Sections 105, 363(b)(1), 363(c)(1), 507(a)(4), 507(a)(5), 541(b) and 1129(a)(9)(B) of the united States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rule 6003 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Rules 5070-1(f) and 9014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "L.B.R.").

## II.   BACKGROUND

4.   On March 24, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").  The Debtor is operating its businesses and managing its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.   No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established in this case.

6.   The Debtor is a Pennsylvania limited liability company and maintains a principal place of business at 542 N. Lewis Road, Suite 207, Limerick, PA  19468.

7.   The Debtor is a multispecialty physician practice compromised of fifty-three (53) health care providers across numerous practices, such as cardiology, pulmonology, critical care, sleep medicine, gastroenterology, hepatology, rheumatology, allergy medicine, geriatrics, family practice, and internal medicine.

8. The Debtor serves an area covering King of Prussia to west of Pottstown, north to Boyertown and Schwenksville, as well as northern Chester County.

9. The Debtor provides care to 229,410 individuals, including three quarters of hospital patients at Phoenixville Hospital and thirty-five percent of hospital patients at Pottstown Hospital.

10. The Debtor has 110,000 offices visits, performs 29,000 hospital procedures, and performs 242,000 office procedures each year.

11. Prior to the Petition Date, the Debtor successfully defended a lawsuit by Myrna and Martin Rawdin (the "State Court Plaintiffs") in the case captioned <u>Rawdin, et al. v. PMA Medical Specialists, LLC, et al.</u>, Case no 2006-26593in the Montgomery County Court of Common Pleas (the "State Court Proceedings") obtaining a defense verdict.

12. After an appeal by the State Court Plaintiffs, the verdict was reversed and the State Court Proceedings were remanded for retrial.

13. Following the retrial, an adverse judgment was entered against the Debtor, after reduction by remittitur, in the total amount of $5,980,085.45 (the "Judgement").

14. Unfortunately, the Judgment is in an amount in excess of the Debtor's applicable insurance coverage, which the Debtor believes totals approximately $1,900,000.00.

15. On March 17, 2016, the State Court Plaintiff unlawfully attempted to attach the Debtor's pre-petition collateral, which was already subject to the Debtor's secured lender existing first priority, fully perfected liens.

16. The attachments are unlawful and in violation of the anti-assignment provisions in the Medicare statute and regulations, in that it is an attempt to attach money in the hands of a "governmental entity."

17. Although the payors are not federal agencies per se, they are government contractors that disburse Medicare payments to eligible Medicare providers. The State Court Plaintiffs also attempted to attach the Debtor's private pay receivables.

18. The Debtor has contemporaneously filed first day motions including a motion for interim and final Orders authorizing the Debtor to use cash collateral.

### A. Pre-Petition Wage and Benefit Obligations

19. As of the Petition Date, the Debtor's current employees consisting of 301 medical professionals and staff and 36 members (collectively, the "Employees") had earned and therefore were owed various sums by the Debtor on account of wages, salaries draws and/or commissions including severance and sick leave pay, costs, benefits, or employee obligations incident to compensation and deductions arising prior to the Petition Date, such as payroll taxes (together, the "Wages").[1] The Employees are paid bi-weekly, one week in arrears.

20. The Debtor is scheduled to make payroll on March 25, 2016 for the two week period ending March 19, 2016. The Debtor estimates that payroll will be total approximately $701,276.53. Attached hereto as Exhibit "A" is a reflecting an estimate of the pre-petition Wages for the payroll due March 25, 2016.

21. In addition, for the Debtor's payroll scheduled for April 8, 2016 for the two week period ending April 2, 2016, five days of Wages will be from the pre-petition period (March 20 through March 24). The Debtor estimates that the pre-petition total for the April 8 payroll will total approximately $250,452.00.

---

[1] The Debtor's request for authority to honor any pre-petition related benefits is not intended to convert any claim for benefits into an administrative expense obligation of the Debtor or to obligate the Debtor in any way to compensate any of their employees for pre-petition benefits in cash. The Debtor's request is also not intended to be an assumption of (or authorization to assume) any of the employee compensation, benefits or reimbursement policies, plans or programs of the Debtors, or any written agreement between the Debtors and any employee pursuant to Section 365 of the Bankruptcy Code.

22. The Employees perform a variety of critical functions including serving the health needs of over a quarter of a million patients per year comprising over half of the combined patients at Phoenixville and Pottstown Hospitals. The Employees' skills and their knowledge and understanding of the Debtor's operations, patients and infrastructure are essential to the Debtor's business.

23. The vast majority of the Employees rely exclusively on their compensation and benefits to continue to pay their daily living expenses and these Employees will be exposed to significant financial difficulties if the Debtor is not permitted to pay them their full unpaid compensation, benefits, and reimbursable expenses in the ordinary course of business.

24. To minimize the personal hardship that the Employees will suffer if pre-petition Employee related obligations are not paid when due or as expected, and to maintain morale and stability in the Debtor's workforce during this critical time, the Debtor, by this Motion seeks authority to pay and honor, in its sole discretion, certain pre-petition claims for, among other items: wages, salaries, draws, commissions, and other compensation, expense reimbursement, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums and taxes), health benefits, vacation time, and all other benefits that the Debtor has historically provided in the ordinary course of its business (collectively and as more fully described below, along with the Wages, the "Employee Obligations") and pay all costs incident to the foregoing. In an abundance of caution, the Debtor requests the rift modify, change, an discontinue any of its employee compensation, programs, policies and benefits and to implement new programs, policies and benefits in the ordinary course of business during this Chapter 11 Case in its sole discretion without the need for further Court approval.

25. It is crucial that the Debtor pay the pre-petition Wages to its Employees as these obligations come due. Without its Employees, the Debtor will be unable to operate its business.

26. The Debtor also requests authority, but not direction, to (i) deduct and pay to the appropriate third party certain amounts from the Employees' paychecks including, without limitation (a) garnishments, child support, and similar deductions and (b) other pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans (collectively, the "Deductions") and to honor pre-petition checks associated with employee benefits.

27. Furthermore, the Debtor is required by law to withhold from an Employee's wages amounts related to federal, state and local income taxes, Social Security and Medicare taxes for remittance to the appropriate federal, state or local taxing authority (collectively, the "Withheld Amounts"). The Debtor must then pay the Social Security and Medicare taxes and pay additional amounts for unemployment insurance (the "Employer Payroll Taxes" or collectively with the Withheld Amounts, the "Payroll Taxes"). The Debtor requests authority, but not direction, to forward any outstanding Payroll Taxes to the appropriate third parties, and to continue to honor and process the pre-petition payments for Payroll Taxes on a post-petition basis, in the ordinary course of business, as routinely done prior to the Petition Date.

28. In the ordinary course of the Debtor's business prior to the Petition Date, the Debtor reimbursed Employees for certain reasonable and customary expenses incurred on behalf of the Debtor in the scope of their employment, including but not limited to professional expenses (the "Reimbursable Expenses"). Because there may be employees who have not submitted reimbursement requests as of the Petition Date, it is impossible for the Debtor to calculate the amount of the Reimbursable Expenses.

29. Reimbursable Expenses are all incurred on the Debtor's behalf and with the

understanding that they will be reimbursed. Accordingly, to avoid harming Employees who may have incurred the Reimbursable Expenses, the Debtor requests authority, but not direction, to be exercised in its sole discretion, to continue to pay Reimbursable Expenses, including but not limited to those that relate to pre-petition periods and are submitted to the Debtor post-petition.

30. In the ordinary course of the Debtor's business prior to the Petition Date, the Debtor maintained and offered to Employees discretionary benefits including, but not limited to, healthcare insurance, dental insurance, short term and long term disability insurance, life insurance, paid time off, 401(k) plan and flexible spending account (the "Employee Benefits").

31. The Debtor requests authority, but not direction, to continue to offer and pay for the Employee Benefits earned prior to the Petition Date which either come due or accrue post-petition.

32. The Employees' valuable skill sets, indispensable knowledge and industry expertise and overall understanding of the Debtor's operations make the Employees critical to the success of this Chapter 11 case.

### III. RELIEF REQUESTED AND BASIS THEREFOR

#### A. Payment of Pre-Petition Wages

33. By this Motion, the Debtor seeks authority to pay and honor in the ordinary course of business and in its sole discretion, pre-petition claims and obligations related to (i) Wages, (ii) Deductions and Payroll Taxes, (iii) Reimbursable Expenses, and (iv) Employee Benefits all as more fully described herein.

34. The Debtor submits that the amounts requested for the pre-petition Employee Obligations are de minimus when compared to the overall creditor claims in this case, but are critical to preserve the Debtor as an ongoing business.

35.     The Debtors submit the relief sought herein is warranted and authorized pursuant to Section 363(b)(1) of the Bankruptcy Code, which provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate," and further justified by the Court's broad equitable powers under Section 105 of the Bankruptcy Code.

36.     Section 105 of the Bankruptcy Code empowers the Bankruptcy Court to "[i]ssue any order, process or judgment that is necessary or appropriate to carry out the provisions of . . ." the Bankruptcy Code. 11 U.S.C. § 105(a). As one court observed:

> The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept. It was first articulated by the United States Supreme Court in Miltenberger v. Logansport, C. & S.W. R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882) and is commonly referred to as either the "doctrine of necessity" or the "necessity of payment" rule. This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor.

In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989).

37.     Application of the "necessity of payment" doctrine in this instance establishes that the Debtors should be authorized to honor their Employee Obligations. See Friedman's Inv. v. Roth Staffing Companies, L.P. (In re Friedman's Inc.), No. 09-50364, 2011 WL 5975283 at *3 (Bankr. D. Del. Nov. 30, 2011) ("Put simply, [t]he doctrine of necessity stands for the proposition that a bankruptcy court may allow payment outside of a plan of reorganization on account of a pre-petition obligation where such payment is critical to the reorganization process") (internal quotations and citation omitted).

38.     First, if the Debtor is not authorized to pay its outstanding Employee Obligations the Debtor's relationship with its Employees will undoubtedly suffer and the Employees' morale,

dedication, confidence, and cooperation might be compromised irreparably. The unmitigated support of the Debtor's employees throughout this Chapter 11 case is critical and cannot be jeopardized. Allowing the Debtor to satisfy the Employee Obligations will instill confidence in the Debtor's workforce that the Debtor is in a position to and intend to satisfy its post-petition payroll and related obligations and will ensure the Debtor has a sufficient support system to operate its business.

39. If the Debtor is not authorized to pay the pre-petition Employee Obligations the Employees, the majority of whom rely exclusively on their compensation, benefits and reimbursement of their expenses to continue to pay their daily living expenses, will suffer significant financial hardship.

40. To the extent that pre-petition payroll checks are returned, the Debtor seeks authority to issue replacement checks to the respective Employees. To the extent that checks were delivered to Employees by the Debtor pre-petition, the Debtors seek authority to honor those payroll checks.

41. The Employee Obligations to be paid to any Employee accrued within 180 days and will not exceed the $12,475.00 cap contained in Section 507(a)(4) and 507(a)(5) of the Bankruptcy Code. In addition, payment of the pre-petition Employee Obligations will not prejudice other creditors of the Debtor's estate as the Employees, in any event, are entitled to priority status under Section 507(a)(4), 507(a)(5) and 507(a)(8) of the Bankruptcy Code with respect to such obligations and payment in full pursuant to a Chapter 11 plan. See 11 U.S.C. §§ 507(a)(4), 507(a)(5), 507(a)(8), 1129(a)(9)(B) and 1129(a)(C).[2]

42. To the extent that any Employee Obligations would cause any Employee to

---

[2] In addition, the portion of the pre-petition payroll taxes withheld from the Employee's wages on behalf of the applicable taxing authority (as well as the other deductions) are held in trust by the Debtor. As such, that portion of the pre-petition payroll taxes (as well as the other

exceed the $12,475.00 cap contained in Section 507(a)(4) of the Bankruptcy Code, the Debtor will cap the pre-petition Employee Obligation so that the total pre-petition Employee Obligation to be received by that Employee do not exceed that cap.

43. For those Employees who received a physical check prior to the filing of the petition and that check has not cleared the Debtor's bank account, the Debtor requests that the Court authorize the Debtor to honor those checks. To the extent that pre-petition payroll checks are returned, the Debtors seek authority to issue replacement checks to the respective employees.

44. The Debtor must maintain its relationship with its employees so that the essential medical services they provide are uninterrupted. If the Employees terminate their employment, the Debtor will be forced to attempt to hire new, untrained medical staff. If that is even possible, patients could receive less than satisfactory service, which may in turn cause irreparable harm to the Debtor's business.

45. For the foregoing reasons and authorities, the Debtors respectfully submit that ample cause exists to grant the relief requested in this Motion. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one (21) days after the Filing Date if the relief is necessary to avoid immediate and irreparable harm. See Fed. R. Bankr. P. 6003.

46. As discussed above, the Employees are integral to the Debtor's operations, which itself is essential to the community the Debtor serves. Failure to satisfy the Employee Obligations in the ordinary course of business during the first twenty-one (21) days of this case will jeopardize the loyalty and trust of the Employees. Certain of the Employees may leave and thereby cause serious disruption to the Debtor's operations during this critical period when the Debtor needs the continued support of its Employees.

---

deductions) is not property of the Debtor's estate under Section 541 of the Bankruptcy Code. See, e.g., Begier v. IRS, 496 U.S. 53 (1990).

47. Based on the foregoing, the Debtor submits that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of the Employee Obligations.

48. No previous motion seeking the relief requested in this Motion has been filed in this or any other Court.

### B.    Request to Maintain Pre-Petition Bank Accounts

49. The Debtor also requests authority to retain its pre-petition bank accounts as reflected in Exhibit "B" hereto (the "Bank Accounts") in their present location.

50. The Debtor maintains a Payroll, Operating and Checking Account which have an ACH arrangement for the easy deposit of insurance funds.

51. The Debtor, for continuity purposes, wishes to maintain its pre-petition Bank Accounts and ACH arrangements, and requests that it be permitted to use its pre-petition letterhead, stationary, invoices, and other documents without the appellation "debtor-in-possession".

52. The expense and interruption that would be caused by requiring the Debtor to change its pre-petition Bank Accounts and business papers is substantial, particularly in light of the Debtor's insurance relationships.

### REQUEST FOR EXPEDITED CONSIDERATION, SHORTENED TIME AND LIMITED NOTICE

53. In accordance with L.B.R. 5070-1(f), and 9014-1, the Debtor seeks expedited consideration of the Motion. The Debtor requests approval of the request for expedited consideration pursuant to L.B.R. 9014-2.

54. Pursuant to L.B.R. 5070-1(f)(3), this request for expedited consideration may be stated as part of the Motion.

55. The Debtor respectfully submits that expedited consideration of the Motion is required to permit the immediate payment of pre-petition Employee Obligations as they become due to prevent a disruption of the Debtor's business operations that would likely prove to be irreparable for the reasons set forth above. The first postpetition payment of Wages to the Debtor's Employees is set to occur on March 25, 2016 and a hearing scheduled in the ordinary course would cause the Debtor to miss that payment.

56. The Debtor further believes that an expedited hearing will not prejudice any of the Debtor's creditors.

57. The undersigned has contacted the office of the United States Trustee as required by L.B.R. 5070-1(f)(1). The United States Trustee has no opposition to expedited consideration.

58. The Debtor respectfully requests a hearing date on March 25, 2016 to enable the Debtor to make payroll as scheduled.

59. Furthermore, the Debtor also requests (a) that this Court permit notice of the hearings to be served by next day mail, facsimile transmission or by electronic means upon (i) the Office of the United States Trustee; (ii) counsel to the State Court Plaintiffs; (iii) counsel to the Debtor's secured lender; (iv) parties to the Debtor's critical vendor motion; and (v) all parties who have timely filed requests for notice under Bankruptcy Rule 2002, and (b) that this Court limit the notice period accordingly. The Debtor believes that such notice is sufficient under the circumstances for the expedited hearing.

60. Reduction of the time periods in question is not prohibited under Fed.R.Bankr.P. 9006(c)(2) and the rules listed therein.

WHEREFORE, the Debtor prays this court enter an order authorizing the Debtor to pay pre-petition Wages and Commissions and for such other relief as the Court deems just and equitable.

Respectfully submitted,

Dated:  March 24, 2016

s/ Edmond M. George
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA  19102
Proposed Counsel to the Debtor